FEE PAID

FILED
CLERK, U.S. DISTRICT COURT
10/12/26
CENTRAL DISTRICT OF CALIFORNIA
BY CS DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

Tara Singhal, Pro Se
Managing Member
Infinite Glow LLC
4620 Laurette Street
Torrance, CA 90503
Tel: (310) 540 5731
infiniteglowllc@gmail.com

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

INFINITE GLOW, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY,

DOES 1 TO 10

Plaintiff,

vs.

JP MORGAN CHASE CO., A NEW YORK CORPORATION, DOES 1 TO 100

Defendant

Case No.: 2:26-cv-12072-ODW-AYPx

COMPLAINT FOR Violation of Substantive Due Process under 5th and 14th Amendment, in deprivation of basic property rights; Breach of implied duty of good faith and fair dealing implied by law in every contract; Violation of Federal Consumer Compliance laws; & Intentional infliction of acute emotional distress.

COMPLAINT FOR VIOLATION OF SUBSTANTIVE DUE PROCESS RIGHTS IN DEPRIVING BASIC PROPERTY RIGHTS

# COMPLAINT

**Violation of Substantive Due Process under 5th and 14th Amendments, Deprivation of Constitutionally Guaranteed Property Rights; Breach of Implied Duty of Good Faith and Fair Dealing Implied by Law in Every Contract, Violation of Federal Consumer Compliance laws & Intentional Infliction of Acute Emotional Distress.**

Plaintiff INFINITE GLOW, LLC ("Plaintiff") brings this Complaint against JP Morgan Chase Co. (JPMC) ("a federally regulated financial institution bank"). This complaint is grounded in:

(A) Violation of Substantive Due Process Rights Under the 5th and 14th Amendments of US Constitution, in Deprivation of Constitutionally Guaranteed Basic Property Rights;

(B) Breach of Implied Duty of Good Faith and Fair Dealing Implied by Law in Every Contract in acting as a predator in depriving property rights; in enforcing a legally void mortgage contract; in enforcing a one or more legally void mortgage contract clauses; via multiple foreclosure actions under the pretext of enforcing a void and voidable material clauses; and in corrupting California State Judiciary;

(C) Violation of Federal Consumer Compliance laws as regulated by the Office of the Comptroller of the Currency (OCC) that monitors lending practices to prevent discrimination and predatory terms under federal laws and comply with laws and regulations; and

(D) Breach of Implied Duty of Good Faith and Fair Dealing Implied by Law in Every Contract, in intentional infliction of acute emotional distress.

# I JURISDICTION AND VENUE

1. Federal Jurisdiction is pleaded on both diversity jurisdiction and violation of US constitutional rights.

**Diversity Jurisdiction:**

2. The core legal principle, underlying federal diversity jurisdiction, is grounded on perceived bias against a party in a State's Judiciary. This perceived bias here in this complaint, instead is a real bias that exists in California state judiciary, against Infinite Glow, an ultra-small family single residential income property business owner, in favor of and for JPMC, the largest bank, as a defendant in California State Courts, as evidenced by these uncontroverted facts.

3. Uncontroverted facts: In a state court litigation by Infinite Glow against JPMC, the three levels of California State Judiciary, viz., a court appointed referee, a superior court judge, and an appeal court judge panel, all ruled for JPMC and against Infinite Glow, *in total disregard of the common law, the statue law, the case law, and the uncontroverted facts of force majeure on the ground, of which not only the JPMC but the entire California State judiciary had direct knowledge of, based on pleadings and they themselves being at the epi center of these force majeure events.*

4. The California State Judiciary's violation of INFINITE GLOW's substantive due process rights under 5th and 14th Amendment, with bias for JPMC, and against Infinite Glow, based on the facts as follows:

5. Fact 1: Wherein, these three bodies of law, common law, the statue law, and the case law, were directed to the obligations of a borrower in a mortgage contract, in view of, the legal doctrine of force majeure. Wherein, under this doctrine, acts-of-god, governmental actions, and other force majeure events such as pandemic, health emergencies etc., that had made the performance on the mortgage contract by the borrower impossible and;

6. wherein, the entire state judiciary ruled, notwithstanding the force majeure events and their impact on Infinite Glow as a borrower, JPMC be allowed to foreclose on Plaintiff's property rights under their, void as a matter of law, contract clause in the mortgage contract.

7. Fact 2: Wherein, the mortgage contract between the parties, *has multiple material clauses that are repugnant to the very notion of fairness and justice, are void as a matter of law and public policy;* wherein the entire state judiciary has been blind to that fact and the law in ruling for the JPMC, in enforcing this void as a matter of law the mortgage contract between JPMC and INFINITE GLOW.

8. <u>Summary:</u> Plaintiff, an ultra-small family business, has been subjected to substantive due process violation bias by State Court Judiciary against a defendant such as JPMC, and their corruptible influence on the State judiciary for them to disregard the entirety of common law, case law and statue law, and these uncontroverted facts, to have ruled in favor of JPMC. Additional facts in support of denial of substantive due process violation are also detailed later here in this complaint.

9. US Federal Courts *should never countenance such a perverse corruptible influence by the largest US Bank JPMC on California State Judiciary against the plaintiff, an ultra-small family business owning a single parcel of residential income property.*

10. Federal jurisdiction is grounded in diversity Jurisdiction in this Court and is proper under 28 U.S.C. section 1332 as the defendant JPMC is a New York corporation, and Plaintiff is a California domiciled limited liability company. The amount involved exceeds $75,000.

11. Venue is proper in this Court under 28 U.S.C. §1391(c) because this is a civil action in which the Plaintiff maintains its principal office and conducts business in this judicial district and Plaintiff's managing members are resident of this district.

12. Plaintiffs have standing to sue because INFINITE GLOW LLC, is suffering and has incurred actual injury because JPMC has been legally enforcing

under the clauses of a mortgage contract between JPMC and Infinite Glow, that are legally void and voidable as a matter of law, by filing multiple judicial as well as non-judicial foreclosures against the single asset of IG, as well as its family member owners, forcing Plaintiff to seek the protection of Chapter 11 bankruptcy filing.

## II US CONSTITUTIONAL LAW VIOLATION

13. The entire foundation of the US Constitution rests on one principal that a person in power and having power over others can never be trusted. This principle applies to everyone who has power and wields power over others. Like executives, members of the judiciary wield that same power and that is why framers enacted 5th Amendment and made it applicable to all states via the 14th Amendment.

14. Framers, in their wisdom, knowing that bias, a human trait, equally applicable to members of the judiciary as much as executives, had enacted the 5th Amendment which requires of such judicial decision makers to be neutral impartial and fair minded. The **Fifth Amendment** to the United States Constitution is a cornerstone of the American legal system designed to ensure **neutral, impartial, and fair-minded treatment.**

15. Framers, knowing full well that these judicial decision makers would be, not neutral impartial and fair minded, and then do everything to hide that bias,

or lack of neutrality impartiality and fair mindedness, Supreme Court had ruled, when confronted with such a human reality that since there can never be a law to define bias in all its manifestations, the best evidence of bias are the facts themselves.

16. Here exists via this complaint, exactly the same situation, based on the facts that the entire California Judiciary would choose to hide their bias for the largest bank JPMC and against an ultra-small family business owning a single residential income property._The statement of facts herein define exactly the same bias in support of denial of substantive due process rights of INFINITE GLOW.

## IIA **First US Constitutional Law Violation:**

17. The Fifth and Fourteenth Amendments of the US Constitution, provides the right of substantive due process of laws, and that substantive due process of laws requires "to be heard by an impartial, neutral and fair minded decision maker".

18. Based on the following uncontroverted facts, plaintiff, Infinite Glow, an ultra-small family single residential income property business owner, against JPMC, the largest bank, *Infinite Glow did not get, across the entire California judiciary, impartial, neutral and fair minded decision makers*.

19. Uncontroverted facts: In a state court litigation by Infinite Glow against JPMC, the three levels of California State Judiciary, a court appointed

referee, a superior court judge, and an appeal court judge panel, all had ruled for JPMC, notwithstanding the enforcement by JPMC of material clauses in the mortgage contract that are repugnant to the very notion of justice and thus are void as a matter of public policy.

20. The mortgage contract between the Infinite Glow and JPMC, contained, multiple material clauses that are repugnant to the very notion of fairness and justice, are void as a matter of law and public policy; wherein the entire state judiciary has been blind to that fact and the law in ruling for the JPMC to proceed to enforce such void as a matter of public policy the void mortgage contract.

21. Based on these above facts, Plaintiff did not get neutral, impartial and fair decision makers, across the three levels of state judiciary, as required by the substantive due process clause. Based on these facts both the laws  and equitable considerations would require the state judiciary to hold in favor of plaintiff and they did not and ruled for JPMC and thus this is direct evidence of substantive due process violations that require a neutral impartial and fair decision makers across the entire California judiciary.

22. This is direct evidence of violation of Infinite Glow's family members Constitutionally guaranteed substantive due process rights and thus forms a legal basis for federal jurisdiction. US Federal Courts should never countenance such a

perverse corruptible influence by the largest US Bank JPMC on California State Judiciary against the plaintiff Infinite Glow, an ultra-small family business owning a single residential income property. Additional facts in support of denial of substantive due process are detailed later here in this complaint.

**IIB <u>Second US Constitutional Law Violation:</u>**

23. The Fourth Amendment of the US Constitution, provides the right of substantive due process of laws, and that substantive due process of laws, necessarily is predicated on the essential right of "to be heard by an impartial, neutral and fair minded decision maker".

24. Based on the following <u>uncontroverted facts</u>, plaintiff, Infinite Glow, an ultra-small family single residential income property business owner asset, against JPMC, the largest bank, Infinite Glow did not get, across the entire California judiciary, impartial, neutral and fair minded decision makers.

<u>25. Uncontroverted facts:</u> In a state court litigation by Infinite Glow against JPMC, the three levels of California State Judiciary, viz., a court appointed referee, a superior court judge, and an appeal court judge panel, all ruled for JPMC, *in total disregard of the common law, the statue law, the case law, and the facts on the ground, of which not only the JPMC but the entire California State*

*judiciary had direct knowledge of, based on pleadings and themselves being at the epi center of these force majeure events.*

26. The California State Judiciary's violation of substantive due process bias under 5th and 14th Amendment, for JPMC, and against Infinite Glow, based on the facts as follows:

27. Fact 1: Wherein these three bodies of law, common law, the statue law, and the case law, were directed to the obligations of a borrower in a mortgage contract, in view of, the legal doctrine of force majeure and;

28. wherein, under this legal doctrine of force majeure, acts-of-god, governmental actions, and other force majeure events such as pandemic, health emergencies etc., that had made the performance on the mortgage contract by the borrower impossible, the entire state judiciary ruled, notwithstanding the force majeure events and their impact on Infinite Glow as a borrower, JPMC be allowed to foreclose.

29. Fact 2: The mortgage contract has multiple material clauses that are repugnant to the very notion of fairness and justice, are void as a matter of law and public policy; wherein the entire state judiciary has been blind to that fact and the law in ruling for the JPMC, in enforcing this void as a matter of law mortgage contract.

30. That is, Plaintiff has been a victim of their substantive due process rights violation by State Court Judiciary against a defendant such as JPMC, and their corruptible influence on the State judiciary for them to disregard the entirety of law and uncontroverted facts, to have ruled in favor of JPMC.

31. Based on these above facts, Plaintiff did not get neutral, impartial and fair decision makers, across the three levels of state judiciary, as required by the substantive due process clause. Based on these facts both the laws and equitable considerations would require the state judiciary to hold in favor of plaintiff and they did not and ruled for JPMC and thus this is direct evidence of substantive due process violations that require a neutral, impartial, and fair decision makers across the entire California judiciary. Additional facts in support of denial of substantive due process are detailed later here in this complaint.

32. Infinite Glow did not have neutral, impartial and fair decision makers, across the entire California State judiciary and thus forms a legal basis for federal jurisdiction. US Federal Courts should never countenance such a perverse corruptible influence by the largest US Bank JPMC on California State Judiciary against the plaintiff Infinite Glow, an ultra-small family business owning a single residential income property.

## III SUMMARY OF THE DISPUTE

33. Note 1. US Department of Justice (DOJ), and Attorney General Honorable Todd Blanche have a role in this complaint, as this complaint against JPMC, the largest US bank, is based on JPMC's lawless and predatory actions towards a ultra-small family owned residential income property business, in depriving their basic rights in ownership of property and making a living thereof; and based on, AG Todd Blanche's explicit directions to the US Citizens, in his speech to DOJ employees to know and address any lawlessness anywhere in the US. Therefore, Infinite Glow would send this complaint to AG Office for his personal attention to take action against JPMC to stop this predatory and lawless conduct.

34. Note 2. US Treasury Secretary Bessent has a role in this complaint, as this complaint is against JPMC, the largest bank, based on their predatory, lawless behavior and conduct towards a ultra-small family owned residential income property business, in stealing their basic rights in ownership of property and making a living thereof; and in view of Secretary Bessent's public statements to the US Citizens, that Trump administration operates in support of the main street and not wall street; where the plaintiff embodies that main street and JPMC embodies wall street. Plaintiff would send this complaint to Treasury Secretary for his personal attention, with a request to join in the complaint, as having oversight over banks, to stop this predatory and lawless conduct of JPMC.

<u>Note 3: Office of the Comptroller of the Currency (OCC):</u> Charters and supervises national banks and federal savings associations. Under OCC, a bank examiner's core responsibilities include: *Consumer Compliance:* Monitors lending practices to prevent discrimination and predatory terms under federal laws and comply with laws and regulations. A banking examiner of OCC does have a role in examination of JPMC's predatory conduct in view of the facts as stated in this complaint.

35. JPMC has been legally enforcing, legally void and legally voidable material clauses of the mortgage contract between the JPMC and Infinite Glow by having filed, three different judicial as well as non-judicial foreclosures actions against the single asset of Infinite Glow LLC, as well as its family member owners, forcing Plaintiff to seek the protection of Chapter 11 bankruptcy filing.

36. In spite of terms in a mortgage contract, as well as the entire mortgage contract, between JPMC and the Plaintiff, are voided as a matter of law, as the material terms of the mortgage contract are repugnant to the very notion of justice and fairness, implied by law in every contract between two parties, here between JPMC and an ultra-small residential income property owner. Every US Attorney General, USA's Chief Law Enforcement Officer, including the current AG, has said on record that the rule of law prevails in US, based on codified law, statue law and the case law.

37. However, JPMC, being the largest bank in USA, does not believe or follow that rule of law at all, in that JPMC decides in the context of a mortgage

contract, their own terms govern, even when they are void as a matter of law or voidable. As these terms are voided as a matter of law as they are repugnant to the very notion of justice and fairness, implied by law in every contract between two parties, here JPMC and an ultra-small residential income property owner.

38. As a material fact: The below contract clause was present in and contained in an affidavit personally signed by Gary Noris, Executive Director of JPMC, **EXHIBIT A**, having been taken from the mortgage contract, in support of JPMC motion in the Bankruptcy Court of Judge Johnson, to lift the stay of foreclosure, to let JPMC proceed to foreclose, depriving Infinite Glow from their basic constitutionally guaranteed property rights, during the pending bankruptcy proceedings in North California, necessitated by JPMC's third attempt to foreclose.

39. "On November 6, 2018, the Singhals' (family members of the LLC) executed a guaranty, unconditionally, absolutely, and irrevocably guaranteeing, among other things, to pay JPMC the Loan when due and to completely and fully discharge and perform each obligation contained in the loan documents (the "Guaranty").

40. *This mortgage note clause, in essence, is no different than the phrase "pound of flesh, as in Shakespeare novel, Merchant of Venice.*

41. A contract exists to further economic interests of both parties and not as a vehicle to deprive or harm the other party. It should be taken as a legal notice that the mortgage contract between JPMC and Infinite Glow was solely and wholly drafted by Chase and they are legally responsible in that the contract be legally fair

to both parties. Here this contract is not fair on its very face with a one or more egregious and abhorrent clauses.

42. No contract term in any contract between two parties, as herein between a bank lender and a small business borrower, owning a single real estate asset of residential income property, can be "unconditionally, absolutely and irrevocably guaranteeing", as the law of contracts, both common law as well as codified law is supreme and is implied in every contract.

43. Wherein, force majeure events among many other events and conditions under the law of contracts, alter or change/modify or void and make voidable the material contract terms and even the entire contract, based on such legally void material contract terms that taint the entire contract.

44. A direct and undisputed evidence of JPMC's breach of duty of good faith and fair dealing is that JPMC had consistently denied and had abrogated any knowledge of these force majeure events, as detailed in the statement of facts, in enforcing a contact term that is void as matter of law.

45. A recent continuing predatory behavior of JPMC has been that based on the terms of the note, for a variable interest loan, for each rate adjustment period, JPMC is required to provide, a timely rate change notice, identifying (i) the computed interest rate as summation of the index rate and the margin and (ii) when applied to the remaining principal balance, to compute the new loan payment.

46. JPMC entirely failed to do that and then created an arbitrary interest rate, without any supporting data and without required notice, falsely alleging no

payments based on this arbitrary rate, to declare default, and when timely payments had been made, attempted to return these cashed payments and use them to declare default to hasten their attempt to foreclose.

47. Evidence of this egregious and shocking JPMC behavior is evident from their recent filed motion dated 09/28/2026, in the Bankruptcy Court of Judge Johnson, in opposition to Infinite Glow's motion for use of cash collateral; is in disclosing for the first time to Infinite Gow, a fabricated interest rate in violation of the terms of the note, by adding an additional interest rate of 0.42826% to convert LIBOR rate to SOFR rate.

48. JPMC by alleging that as part of conversion from LIBOR to SOFR, and JPMC had added the extra interest rate of 0.42826%. when these two benchmark interest rates are functionally equivalent, as, one being overnight rate between London England banks and later being overnight rate between US based banks.

49. JPMC's lack of good faith and fair dealing based on facts as above has been the cause of violation of substantive due process rights of the Plaintiff, under the 5th and 14rth Amendment of the US Constitution, to have judges across the entire California State Judiciary that are not neutral, impartial, and fair in having ruled for JPMC and against INFINITE GLOW.

50. Given that California judges are under the influence of large businesses such as JPMC and stymied under their perverse influence to not make a decision against them and in such decisions, choose to and do not act in the role of neutral, impartial and fair judges, in that they feel compelled under the JPMC influence, to totally disregard the rule of law. That had required Infinite Glow to have filed a petition to California Supreme Court, which was summarily denied, thus affirming this denial of substantive due process rights, across the entire California State Judiciary.

51. Wherein, Infinite Glow's legal counsel have advised plaintiff to not expect justice from California Supreme Court, even in grant of Plaintiff's petition for hearing, let alone a fair hearing, when Plaintiff's adversary is largest bank such as JPMC; and thus this forms a legal basis for Infinite Glow having to file this complaint with the Federal Courts. In federal court, Plaintiff, would have the ability to be heard and receive justice against this gross miscarriage of justice by California State Judiciary, in depriving basic fundamental rights of substantive due process and enjoyment of basic right of owning a property and making a living therefrom.

52. The facts as here in this complaint and therein the legal situation of depriving basic property rights as in this complaint, are very much like in a recent US supreme court decision, referred to as Chevron Deference Doctrine decision, wherein Supreme Court gutted the thirty years old Chevron Deference Doctrine.

53. Facts and Legal issues here in this complaint are identical and standing of the parties is also identical to Chevron Deference case and presents the same and similar constitutional issues of deprivation of basic rights without substantive due process of laws. Wherein, in the above referenced gutted Chevron Deference doctrine, Supreme Court case, between Department of Commerce and a small fisheries business, where the legal issue before the US Supreme Court was, gross misinterpretation of a commerce statue by dept of commerce to deprive and shut down a small fishery's business.

54. Here in this complaint, it is JPMC, the largest US bank, using contract terms that are illegal on their face and voided by law to deprive a small residential income property business to illegally deprive them of their property and make them go out of business.

55. No judiciary of a civilized society would permit that but California State Judiciary have done that and thus have required the plaintiff to file a petition to California Supreme Court and that petition having been filed, was summarily denied without a hearing. Thereby, plaintiff has been deprived of their substantive due process rights, based on facts as further detailed later herein in this complaint.

56. Plaintiff has a cause of action, as detailed later herein, for compensation and penalty for egregious behavior in filing three foreclosure actions based on this voided contract and facts that support intentional, abhorrent, and egregious conduct that has caused us great psychological harm. Infinite Glow

LLC, , an ultra-small family owned business, with a single asset residential income property that has a mortgage financed by JPMC, in place since November, 2018.

## IV FACTS THAT SUPPORT VIOLATION OF SUBSTANTIVE DUE PROCESS RIGHTS

57. The following facts support Infinite Glow's cause of action of violation of substantive due process under the 5Th and 14th Amendment of the US Constitution, wherein that substantive due process requires a neutral, impartial and a fair-minded decision maker.

58. In California State Court proceedings Infinite Glow, an ultra-small family owned single asset residential income real property business, in their litigation against JPMC, the largest bank, in all State court judicial proceedings, including ADR Judge, Alameda Superior court and California First Appeal Court did not have neutral, impartial and fair-minded decision makers, based on the facts as recited below.

59. In State Court proceedings, the first of those decision makers was a retired judge Kevin Murphy, acting in the role of ADR as a referee selected exclusively by JPMC, under JPMC motion to the court that the clause in the contract requires any dispute be referred to a referee and then that was approved by the superior court judge.

60. The JPMC had never informed that the note the Infinite Glow principals had signed in November 2018, had a mandatory referee clause and by signing this note, the principals were giving up their fundamental rights to a jury

trial. Thus this referee clause is void due to lack of informed consent and that lack of informed consent was supported by breach of implied duty of good faith and fair dealing by JPMC.

61. Subsequent to that JPMC invoked that referee clause by filing a motion in the county court. The motion was granted as merely enforcing a clause in the contract. JPMC attorney then chose this specific referee Kevin Murphy.

62. The facts before ADR judge, in Infinite Glow's pleadings were that (i) there existed force majeure events, specifically in the Alameda County, wherein under Health Emergency declared by the County, pursuant to Covid-19 pandemic, and therein rent and eviction moratoriums since March 2020 that had lasted close to four years; (ii) this heath emergency and therein enacted moratoriums had prevented Infinite Glow to enforce rent collections, for over four years, and being unable to collect rent from their tenants; (iii) Infinite Glow was unable to satisfy its obligations to their mortgager JPMC for timely paying mortgage and county property taxes; (iv) Infinite Glow asked JPMC for deferment of its obligations until the effect and aftermath of these force majeure events was abated; (v) JPMC flatly refused and filed for a foreclosure action; (vi) and thus Infinite Glow was forced to file a lawsuit for declaratory relief that under the force majeure common law doctrine and its California statues, Infinite Glow had never defaulted on their obligations.

63. The applicable law before the ADR judge, in Infinite Glow's pleadings were that (i) there existed force majeure events and therein applicable California statues that codified force majeure events, wherein the obligations of a

borrower in a mortgage were suspended, as performance being impossible; (ii) and specific case laws that for Infinite Glow, a single asset real estate entity, a different case law existed unlike a large multi-state corporate entity which would have assets from their other business activities, unaffected by the force majeure events would have the ability to fulfill their commercial loan obligations; (iii) other three case law was cited in support of a single asset entity inability to meet its obligations; (iv) JPMC cited their three cases applicable to large multi-state commercial entities who would have other sources of income to meet their loan obligations.

64. Federal case law created the legal doctrine of single asset real estate entity (SARE) in the interest of justice, so that no judicial body shall ignore that case law. Here SARE is family owning an 18 unit residential building, with 14 units being efficiency units, with annual gross rental income of less than $400,000; and providing essential service as housing provider to the Oakland community.

65. California judiciary intentionally disregarded these facts and the legal case cites, as above, in ruling that JPMC had an absolute right to foreclose and Infinite Gow has no defense, even when the JPMC contract clause is void and voidable as repugnant to public policy. California judiciary intentionally disregarded that and thus is direct evidence of bias and lack of neutrality, impartiality and fair-mindedness.

66. State judiciary sees no harm in letting JPMC enforce that mortgage clause repugnant to very notion of justice and fairness and thus leads to an

inference of lack of neutrality impartiality and fair mindedness in their decision making.

67. In spite of facts and law as in clauses immediately preceding, ADR Judge Kevin Murphy ruled in the favor of JPMC, with no explanation or leave to amend the filings, and thus permitting JPMC to proceed with its foreclosure actions.

68. Based on this ruling, ADR Judge Murphy and applicable 5th and 14th Amendments on substantive due process case law rulings on the definition of "neutrality" Kevin Murphy ADR judge was, by any standard of justice, not a neutral, impartial and fair decision makers and thus was biased based on these facts.

69. The neutrality requirement of US Constitution's Fifth and Fourteenth Amendments' substantive due process helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law. Here ADR Judge Kevin Murphy had ruled on the basis of that an erroneous or distorted conception of the facts and the law and thus violated this neutrality requirement of the substantive due process clause both under 5th and 14th amendments of the US Constitution, an erroneous or distorted conception of the facts or the law by ADR judge in holding against Infinite Glow and for JPMC on all issues.

70. Then the Alameda County Superior Court judge had a legal duty to ascertain ADR judge decision as being sound on the basis of not being an

erroneous or distorted conception of the facts or the law. The Alameda County Superior Court Judge wholly abdicated that their legal responsibility and rubber stamped that ADR judge decision.

71. The Alameda County superior court judge then rubber stamped that Referee Kevin Murphy judge's decision, requiring Infinite Glow to file an appeal. The appeal panel in a hearing which both the attorney and plaintiff attended in person, observed, to our utter dismay that the panel's main judge ridiculed the citation of force majeure laws and its California code and held against the plaintiff, stating that appellant Infinite Glow as having pleaded no facts in their support.

72. In the support of the above facts and the law, as above, Infinite Glow makes reference to the both the briefings made to Kevin Murphy as well as to the Appeal Court Panel. The briefings are attached as **Exhibits B** for the Appeal court briefings of, opening brief, opposing brief and reply brief, as they identify the legal and factual errors at the ADR judge level.

73. The Appeal Court ruling was so bizarre ignoring the entirety of law and facts as detailed in our briefs compelled Infinite Glow's principal, later in time after the appeal court decision, to have examined and analyze these four judges background and found many facets of their character and facts in support that they were not a neutral, impartial and fair minded decision maker.

74. A Supreme Court ruling as cited below, that allegation of bias by judge cannot be used, however the facts here are so overwhelming that do support bias. 556 U.S. 868, 884 (2009). Chief Justice Roberts, joined by Justices Scalia, Thomas, and Alito, dissented, asserting that "a 'probability of bias cannot be

defined in any limited way," "provides no guidance to judges and litigants about when recusal will be constitutionally required," and "will inevitably lead to an increase in allegations that judges are biased, however groundless those charges may be." 556 U.S. at 891 (Roberts, C.J., dissenting). The majority countered that "[t]he facts now before us are extreme in any measure." 556 U.S. at 887.

75. An anecdotal, but very potent fact, in support Infinite Glow's claim of denial of substantive due process in California courts for Infinite Glow, against JPMC comes from a direct statement to IG principals from BNK federal judge Neil Bason during BNK mediation efforts that if Infinite Glow were to sue Alameda County for the harm to Infinite Glow  via their 4 year moratoriums, Infinite Glow would not get any justice.

76. This Judge Neil Bason statement, as above to Plaintiff principals is direct evidence that in state courts, JPMC being the largest bank, would be akin to suing a government entity and thus Infinite Glow would not get neutral and impartial judiciary, and that had already happened, as has been detailed above.

77. Plaintiff Infinite Glow has made of record in this complaint, sufficient facts that support their allegation of that in the California Judiciary decisions, against their case against JPMC, the largest bank, their 5th and 14th Amendment rights of substantive due process in having neutral, impartial and fair-minded decision makers were violated.

## V STATEMENT OF OTHER RELEVANT FACTS IN SUPPORT OF BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING AND INFLICTION OF EMOTIONAL DISTRESS

78. Unbeknownst to anyone, the COVID Pandemic hit USA around March 2020. Pursuant to the pandemic, County of Alameda and City of Oakland, independent of each other, declared their health emergencies and under these declared health emergencies and acquired broad authorities, enacted rent and eviction ordinances that permitted Plaintiff's tenants to live rent free for more than three and a half years.

79. Even when, County of Alameda and City of Oakland, independent of each other, declared their health emergencies, any ordinances thereby enacted have to be germane to the County's governmental responsibilities to ameliorate the health aspects of the pandemic, such as, directives for closing large gathering establishments and other such events, as well as maintaining distance between people in essential to living businesses such as super markets; nevertheless these rent and eviction moratoriums even when had no relationship to private tenant and landlord private leases, with no nexus to spread of the pandemic and which had no such health related issues, were enacted.

80. As a result of these, eviction and rent moratoriums enacted by both the City of Oakland and Alameda County, INFINITE GLOW could not enforce

rent collections. With the severely reduced rental income, INFINITE GLOW was unable to pay property taxes; however with considerably reduced rental income, INFINITE GLOW prioritized paying JPMC mortgage until February 2023.

81. With the continuation of these moratoriums, our tenants realized they would be able to live rent free and would not be evicted leading to further erosion of INFINITE GLOW's rental income.

82. INFINITE GLOW approached JPMC's Gary Norris, Executive Director for this area, around March/April of 2023, for deferment of the mortgage obligations until INFINITE GLOW's ability to enforce rental income collection is restored after the end of these moratoriums, with which to pay the mortgage. Gary Norris asked us to sign deferment forms, which required Infinite Glow to acknowledge that this deferment was being sought entirely due to borrower's fault and assigned all borrower' right to the bank. Infinite Glow amended the preprinted form to add clauses to the effect that the deferment was being sought due to the Covid health emergency and moratoriums that had reduced our rental income.

83. Notwithstanding the prevailing codified law, for such acts of god that render performance impossible and impractical, in spite of these facts being brought to his attention, Executive Director Gary Norris, flatly declined any deferment due to these pandemic related acts-of-god.

84. For jury members, a factual issue would be how Gary Norris would be unaware of the COVID pandemic and resulting health emergencies and therein enacted eviction and rent moratoriums, as if they had any impact on JPMC customers, such as INFINITE GLOW, to be able to flatly decline INFINITE GLOW's legitimate and reasonable request for deferment of their mortgage obligations under the note.

85. Notwithstanding INFINITE GLOW's express efforts to raise these serious issues to JPMC senior leadership for resolution, INFINITE GLOW efforts were actively interfered with by Gary Norris. There is ample correspondence, as evidence, attesting to this predatory behavior of Gary Norris.

86. JPMC filed for a foreclosure action in August 2023. INFINITE GLOW filed lawsuit on 10/31/2023 against JPMC, challenging the basis of the foreclosure action. INFINITE GLOW's lawsuit was seeking a declaratory judgement, based on applicable law that the mortgage default never happened due to *force majeure* event of the COVID pandemic and therein enacted health emergencies.

87. The INFINITE GLOW's lawsuit detailed sufficient facts in support of the force majeure event of the pandemic and therein resulting health emergencies and therein enacted moratoriums that prevented INFINITE GLOW from enforcing rent collection or adjusting rents.

88. JPMC chose to not answer and never answered the complaint, even though required to do so when INFINITE GLOW's managing member had signed the complaint in the lawsuit, vouching for the facts in the complaint.

89. When INFINITE GLOW Counsel enquired why JPMC has not filed an answer to the complaint, JPMC responded that even assuming the facts as in the complaint are true, JPMC still maintained that they have a right to have filed the foreclosure action, which is legally impermissible.

90. While that INFINITE GLOW lawsuit was in active litigation, JPMC proceeded to file a judicial foreclosure action in August 2024, naming INFINITE GLOW as well its principals as defendants, and serving the complaint at a Managing member's home.

91. While the INFINITE GLOW lawsuit against JPMC in state courts continued for declaratory relief, INFINITE GLOW timely filed an answer to that judicial foreclosure lawsuit. A discovery phase was never initiated; thus this judicial foreclosure lawsuit is still pending.

92. Subsequent to JPMC's judicial foreclosure action in August 2024, JPMC filed a new foreclosure action on February 01, 2025. Based on the advice of our counsel, INFINITE GLOW was forced to petition for Chapter 11 bankruptcy (BNK). These BNK proceedings are ongoing with a BNK Plan being approved by BNK judge in March 2026.

93. During the time BNK was in process, JPMC continued to defend INFINITE GLOW's lawsuit by seeking a judicial referee and selecting that referee. In a ruling in May 2025, Referee ruled against INFINITE GLOW, relying on JPMC cited totally bogus case laws, while totally disregarding the applicable case law cited by INFINITE GLOW counsel.

94. The above referee decision was rubber stamped by state court judge, and that has raised an inference of JPMC having undue influence on the referee judge. INFINITE GLOW via their business attorney filed an appeal brief on December 26, 2025 citing a plethora of legal errors in the Court's and Referee's ruling.

95. Pursuant to INFINITE GLOW having filed their opening appeal brief, JPMC's respondent brief was due February 25, 2026. Even after seeking a one week extension of time agreed to by INFINITE GLOW Counsel, JPMC defaulted on their respondent's brief by not filing their respondent's brief.

96. By JPMC intentionally defaulting on their respondent's brief, they have tacitly agreed that the court would proceed to issue a ruling for declaratory relief that the mortgage default never occurred and thus there has been no legal basis for JPMC to have filed three different successive foreclosure actions against INFINITE GLOW.

97. JPMC defaulting on their respondent's brief has a direct effect on the BNK Plan, that was approved before JPMC's default. Because of that default,

JPMC is liable to INFINITE GLOW, instead of INFINITE GLOW being liable to JPMC, as INFINITE GLOW had never defaulted on its mortgage obligations.

98. However, California Appeal Court accepted such late filed by one month, without requiring a showing from JPMC, for such late filing, when such late filing prejudiced Appellant's rights. This is evidence of lack of neutrality, impartiality and fair-mindedness exhibited by the appeal court in favor of JPMC and against Infinite Glow.

99. Pursuant to bankruptcy procedures, the creditors are required to vote for the BNK Plan and INFINITE GLOW's BNK attorney is in the process of persuading JPMC to vote for the approval of the plan.

100. INFINITE GLOW BNK attorney has advised INFINITE GLOW that JPMC would not be inclined to vote for the approval of the BNK Plan. If JPMC does not vote to approve the plan, would result in a chapter 7 liquidation of the single real estate holding of INFINITE GLOW, harming INFINITE GLOW and depriving INFINITE GLOW of their substantial equity in the property.

101. INFINITE GLOW BNK attorney further advised INFINITE GLOW that however JPMC may be persuaded to vote for the approval of the BNK Plan, if they are incentivized to vote for the plan by being offered an extra-ordinary large lumpsum payment in advance as well as being offered an extra-ordinary higher interest rate than what is required by the terms of the note.

102. INFINITE GLOW BNK attorney, yet further advised INFINITE GLOW that in furtherance of JPMC's ultimate objective to sell the property at auction, thus depriving INFINITE GLOW of their considerable equity in the property, JPMC would not approve the BNK Plan.

103. JPMC would achieve that nefarious purpose, to sell the property at auction by voting to not approve the BNK Plan, forcing a chapter 7 liquidation of the single real estate holding of INFINITE GLOW.

104. In an attempt to settle these issues directly with JPMC senior executives, including Michelle Herrick, Head of Commercial banking and Stacey Friedman, General Counsel, Infinite Glow managing members had recently contacted these executives, with these facts as above; however, they declined and instead choose to approve their employees abhorrent and egregious conduct has been detailed above.

105. INFINITE GLOW believes, given the JPMC conduct summarized with the facts as above, would be persuasive to a jury to likely to vote for similarly large compensation and punitive damages.

## VI PARTIES

106. Plaintiff INFINITE GLOW LLC is a California limited liability company with LLC managing members residence in Southern California, and has a

principal place of business in Los Angeles, CA and the rental property is located at 2912 14th Ave, Oakland, CA 94606.

107. Plaintiff not yet know with certainty the identities of Does 1 to 10 and would seek leave to amend the complaint when their identities are known.

108. Defendant JPMC, Jamie Dimon, CEO; JP Morgan Chase Co. Corporate Office Details 270 Park Avenue, New York, NY 10017. A regulated financial business bank enterprise. Address: 270 Park Avenue, New York, NY 10017; Main Phone Number: (212) 270-6000.

109. Plaintiff not yet know with certainty the identities of Does 1 to 100 and would seek leave to amend the complaint when their identities are known.

## VII CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**Violation of US Constitutional Rights of Substantive Due Process as in 5th and 14th Amendments and in Deprivation of Basic Property Rights.**

110. Plaintiff INFINITE GLOW, LLC ("Plaintiff") brings this Complaint against JP Morgan Chase Co. (JPMC) ("a regulated financial institution bank") for,

Violation of US Constitutional Rights of Substantive due process in Deprivation of Basic Property Rights.

111. Paragraphs 110 are reproduced here as though fully set forth here.

**SECOND CAUSE OF ACTION**
**Breach of Implied Duty of Good Faith and Fair Dealing Implied By Law in Every Contract**

112. Plaintiff INFINITE GLOW, LLC ("Plaintiff") brings this Complaint against JP Morgan Chase Co. (JPMC) ("a regulated financial institution bank") for:

Breach of Implied Duty of Good Faith and Fair Dealing Implied by Law in Every Contract in acting as a predator in depriving property rights; in enforcing a legally void mortgage contract; in enforcing a one or more legally void mortgage contract clauses; via legal actions of multiple foreclosure actions under the pretext of enforcing a void and voidable material clauses; and in corrupting California State Judiciary.

Paragraphs 1-110 are reproduced here as though fully set forth here.

**THIRD CAUSE OF ACTION**

113. Plaintiff INFINITE GLOW, LLC ("Plaintiff") brings this Complaint against JP Morgan Chase Co. (JPMC) ("a regulated financial institution bank") for, Violation of Federal Consumer Compliance laws as regulated by the Office of the Comptroller of the Currency (OCC) that monitors lending practices to prevent discrimination and predatory terms under federal laws and comply with laws and regulations

114. Paragraphs 110 are reproduced here as though fully set forth here.

## FOURTH CAUSE OF ACTION

### Intentional Infliction of Acute Emotional Distress.

115. Plaintiff INFINITE GLOW, LLC ("Plaintiff") brings this Complaint against JP Morgan Chase Co. (JPMC) ("a regulated financial institution bank") for intentional infliction of emotional distress on the family members and owners of this business.

116 Paragraphs 1-110 are reproduced here as though fully set forth here.

## VIII PRAYER FOR RELIEF

## FIRST CAUSE OF ACTION

**Violation of US Constitutional Rights of Substantive Due Process as in 5th and 14th Amendments and in Deprivation of Basic Property Rights.**

1. Infinite Glow prays for these damages:
2. Declaration that any and all judgments and rulings of California State Judiciary, in Infinite Glow LLC vs. JPMC **CASE NUMBER: 24CV082399,** are vacated and are null and void, in view of violation of basic substantive due process rights.
3. Declaration that said mortgage contract with specific clauses is void as being against public policy with such contract clauses that are repugnant to very notion of justice.
4. Demand for Jury Trial and Claim for $5 Billion dollars, including compensation and punitive damages.
5. Award of attorney fees for this action as well as state court actions.

## PRAYER FOR RELIEF

## SECOND CAUSE OF ACTION

**Breach of Implied Duty of Good Faith and Fair Dealing Implied By Law in Every Contract**

6. Infinite Glow prays for these damages:

7. Declaration that any and all judgments and rulings of California State Judiciary, in Infinite Glow LLC vs. JPMC **CASE NUMBER: 24CV082399,** are vacated and are null and void, in view of violation of basic substantive due process rights.
8. Declaration that said mortgage contract with specific clauses is void as being against public policy with such contract clauses that are repugnant to very notion of justice.
9. Demand for Jury Trial and Claim for $5 Billion dollars, including compensation and punitive damages.
10. Award of attorney fees for this action as well as state court actions.

## PRAYER FOR RELIEF

## THIRD CAUSE OF ACTION

**Plaintiff INFINITE GLOW, LLC ("Plaintiff") brings this Complaint against JP Morgan Chase Co. (JPMC) ("a regulated financial institution bank") for, Violation of Federal Consumer Compliance laws as regulated by the Office of the Comptroller of the Currency (OCC) that monitors lending practices to prevent discrimination and predatory terms under federal laws and comply with laws and regulations.**

11. Infinite Glow prays for these damages:

12. Declaration that any and all judgments and rulings of California State Judiciary, in Infinite Glow LLC vs. JPMC **CASE NUMBER: 24CV082399,** are vacated and are null and void, in view of violation of basic substantive due process rights.

13. Declaration that said mortgage contract with specific clauses is void as being against public policy with such contract clauses that are repugnant to very notion of justice.

14. Demand for Jury Trial and Claim for $5 Billion dollars, including compensation and punitive damages.

15. Award of attorney fees for this action as well as state court actions.

## PRAYER FOR RELIEF

## FOURTH CAUSE OF ACTION

### Intentional Infliction of Acute Emotional Distress.

16. Infinite Glow prays for these damages:

17. Declaration that any and all judgments and rulings of California State Judiciary, in Infinite Glow LLC vs. JPMC **CASE NUMBER: 24CV082399,** are vacated and are null and void, in view of violation of basic substantive due process rights.

18. Declaration that said mortgage contract with specific clauses is void as being against public policy with such contract clauses that are repugnant to very notion of justice.

19. Demand for Jury Trial and Claim for $5 Billion dollars, including compensation and punitive damages.

20. Award of attorney fees for this action as well as state court actions.

## IX JURY TRIAL DEMANDED

1. Plaintiff demands a jury trial.

Dated October 12, 2026.

/s/ Tara C. Singhal

Tara Singhal, member
Infinite Glow LLC

# EXHIBIT A

## Affidavit of Gary Norris in BNK Proceedings in North California District

Mia S. Blackler (SBN 188112)
LUBIN OLSON & NIEWIADOMSKI LLP
The Transamerica Pyramid
600 Montgomery Street, 14th Floor
San Francisco, California 94111
Telephone: (415) 981-0550
Facsimile: (415) 981-4343
mblackler@lubinolson.com

Attorneys for Secured Creditor JPMORGAN CHASE BANK, N.A.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>INFINITE GLOW LLC,<br><br>Debtor. | Case No. 25-50253-SLJ<br><br>Chapter 11<br><br>**DECLARATION OF GARY NORRIS IN SUPPORT OF SECURED CREDITOR JPMORGAN CHASE BANK, N.A.'S MOTION FOR RELIEF FROM AUTOMATIC STAY RE PROPERTY LOCATED AT 2912 14TH AVE., OAKLAND, CA 94606**<br><br>Date: May 5, 2026<br>Time: 10:00 a.m.<br>Dept.: Courtroom 10<br>Judge: Hon. Stephen L. Johnson |

I, Gary Norris, declare as follows:

1. I am an authorized officer, Special Credits Director, of JPMorgan Chase Bank, N.A. ("JPMC"). Unless otherwise indicated below, I make this declaration based on my personal knowledge and my review of the business records of JPMC as described in paragraph 3 of this Declaration, except as to those matters stated on information and belief which are believed to be true.

2. In my capacity as a member of JPMC's Special Credits risk group, I am one of JPMC's employees responsible for managing the commercial real estate loan (the "Loan") to

Infinite Glow LLC ("Debtor"), which Loan was secured by a deed of trust encumbering 18-unit apartment complex commonly described as 2912 14th Avenue, Oakland, CA 94606 (the "Property"), including, but not limited to, the rents, issues, profits, and revenues of the Property.

3. I have access to certain of JPMC's records, including the business records for and relating to the Loan. I make this affidavit based upon my review of those records relating to the Loan and from my own personal knowledge of how they are created, kept, and maintained. The records for the Loan are: (a) made at or near the time of the occurrence of the matters recorded by persons who are engaged in the business and who have personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept, made, and maintained in the course of JPMC's regularly conducted business activities, and; (c) created so that they may be relied upon as being accurate. It is the regular practice of JPMC to make such records. JPMC's records that relate to the Loan that I reviewed and relied upon for the factual statements made in this affidavit include the exhibits to this affidavit and JPMC's electronic servicing system.

4. In connection with the Loan, Debtor executed in favor of JPMC a Promissory Note, Addendum to Promissory Note, and Prepayment Addendum to Promissory Note, dated November 6, 2018, in the original principal amount of $3,200,000.00 (the "Note"). A copy of the Note (redacted to remove certain confidential information) is attached hereto as **Exhibit A**.

5. To secure repayment of the indebtedness evidenced by the Note, on or about November 6, 2018, Mukunda Singhal and Tara Singhal (collectively, the "Singhals"), on behalf of Debtor, executed and delivered to JPMC, as beneficiary, a Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing (the "Deed of Trust"). The Deed of Trust reflects that it was recorded on November 9, 2018 in the Official Records of the Alameda County as document number 2018216518. A copy of the Deed of Trust (redacted to remove certain confidential information) is attached hereto as **Exhibit B**.

6. On November 6, 2018, the Singhals executed a guaranty, unconditionally, absolutely, and irrevocably guaranteeing, among other things, to pay JPMC the Loan when due and to completely and fully discharge and perform each obligation contained in the loan

documents (the "Guaranty"). A copy of the Guaranty (redacted to remove certain confidential information) is attached hereto as **Exhibit C**.

7. JPMC is the owner of the Note and the Deed of Trust. The Note, Deed of Trust, Guaranty and other documents evidencing and/or securing the Loan are hereinafter referred to collectively as the "Loan Documents."

8. On or about March 1, 2023, and each month thereafter, the Debtor defaulted on its obligations under the Loan Documents by, among other things, (1) failing to make the monthly payments due under the Note on March 1, 2023 and thereafter, and (2) failing to pay the secured property taxes assessed against the Property for the 2020-2021, 2021-2022, 2022-2023, 2023-2024 and 2024-2025 tax years.

9. On February 3, 2025, JPMC caused a Notice of Trustee's Sale to be recorded with the Alameda County Recorder as Document No. 2025015185. JPMC's foreclosure of its Deed of Trust was originally scheduled for February 28, 2025. The sale date was then postponed since the Debtor's December 27, 2025 bankruptcy proceeding. A copy of the Notice of Trustee's Sale is attached hereto as **Exhibit D**.

10. The Loan Documents require, at a minimum, monthly interest payments. Since approximately March 1, 2023, JPMC did not receive any payments from Debtor until it was ordered on or about April 21, 2025 to make adequate protection payments in this bankruptcy proceeding. (Dkt. # 41.) The payments required under the Loan Documents include, but are not limited to, monthly interest, late charges, and default interest due and owing to JPMC.

11. In June 2025, JPMC discovered, via a letter dated June 10, 2025 from the Alameda County Office of the Treasurer and Tax Controller, that the total amount due on prior years' taxes was $437,381.96 as of June 10, 2025. The letter further provided that, if the delinquent taxes were paid in full within 30 days, Debtor would have been eligible for a one-time penalty waiver and would have received a credit of $154,658.20. In other words, Debtor only had to pay the sum of $282,723.76 (instead of $437,381.96, the total amount due) if it had paid the delinquent property taxes on or before July 14, 2025. However, Debtor did not take advantage of this discount and did not make any property tax payments on or before July 14, 2025. A copy of the June 10, 2025

letter from the Alameda County Office of the Treasurer and Tax Controller is attached hereto as **Exhibit E**.

12. As set forth in JPMC's Proof of Claim filed on June 30, 2025, as of the date the Debtor commenced his bankruptcy proceeding on February 27, 2025, Debtor owed JPMC a total of **$3,563,336.56** on the Loan. These sums continue to accrue interest, and JPMC has been forced to incur further legal expenses to have its counsel assist it in connection with this bankruptcy proceeding. Trustee's fees also continue to accrue.

13. On January 21, 2026, I called the Alameda County Treasurer-Tax Collector's Office and spoke to a customer service agent named Gery, who confirmed that, as of that date, the secured property taxes assessed against the Property were delinquent in the sum of $571,489.37, including penalties, interests, and fees. Gery further confirmed that Debtor also failed to make the first installment payment for the 2025-2026 tax year, which was due on December 10, 2025 and is now delinquent in the sum of $37,210.93. I obtained from the Alameda County Treasurer-Tax Collector's Office website a printout summarizing the delinquent and current taxes assessed against the Property, a copy of which is attached hereto as **Exhibit F**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 30th day of MARCH, 2026, at Sacramento, California.

Gary Norris

Gary Norris
Authorized Officer

# EXHIBIT B

# BRIEFINGS IN CALIFORNIA APPEAL COURT

**No. A174415**

**IN THE COURT OF APPEAL**

**OF THE STATE OF CALIFORNIA**

**FIRST APPELLATE DISTRICT**

**DIVISION 2**

---

**INFINITE GLOW, LLC**

*Plaintiff and Appellant*

vs.

**JPMORGAN CHASE BANK N.A.**

*Defendant and Respondents*

---

**APPEAL FROM THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF ALAMEDA**

**HONORABLE KARIN SCHWARTZ, JUDGE, DEPARTMENT 207**

**(CASE NUMBER: 24CV082399)**

---

# APPELLANT'S OPENING BRIEF

---

RUSSELL M. FRANDSEN, ESQ., (SBN 070880)
**THE BUSINESS LEGAL GROUP**
1313 Foothill Boulevard, Suite 6
La Canada Flintridge, CA 91011
Tel: (818) 915-0426; Fax: (213) 403-5962
rfrandsen@businesslegalgroup.com

**Attorney for Plaintiff and Appellant**

## CERTIFICATE OF INTERESTED ENTITIES OR PERSONS

This Certificate is being submitted on behalf of Appellant Infinite Glow LLC.

There are no interested entities or persons that must be listed in the certificate under Rule 8.208.

The undersigned certifies that the foregoing is true and correct.

Date: December 26, 2025.

/s/ Russell M. Frandsen
Russell M Frandsen
Attorney for Infinite Glow, LLC

Contents

**I. INTRODUCTION: THIS APPEAL SEEKS TO CORRECT AN EGREGIOUS MISAPPLICATION OF CIVIL CODE SECTION 1511, CIVIL CODE SECTION 3531, AND THE DOCTRINE OF FORCE MAJEURE.** ........ 7

**A. Nature of the Action: Infinite Glow LLC filed an action for Declaratory Relief that the doctrine of force majeure resulting from Covid-19 pandemic and the ensuing moratoria excused the debt service payments to the Bank during the Covid-19 pandemic and its aftermath.** ........ 7

**B. Relief sought in the Trial Court: Infinite Glow sought Declaratory Relief that Debt Service obligations are suspended during the Covid-19 pandemic and the ensuing moratoria on rent collection.** ........ 9

**C. Judgment appealed from: Infinite Glow appeals from a judgment sustaining a demurrer to its Complaint without leave to amend.** ........ 10

**II. ISSUE ON APPEAL** ........ 10

**III. STATEMENT OF APPEALABILITY** ........ 11

**IV. STANDARD OF REVIEW** ........ 11

**A. A Judgment Dismissing an Action after the Trial Court Sustains a Demurrer Is Reviewed De Novo, and Every Inference Must Be Drawn in Infinite Glow's Favor.** ........ 11

**V. STATEMENT OF CASE AND FACTS SUPPORTING THE APPEAL** ........ 13

**A. Infinite Glow LLC is a single asset limited liability company operating an apartment building financed by a loan from JP Morgan Chase Bank.** ........ 13

**VI. THIS APPEAL IS A CASE OF FIRST IMPRESSION.** ........ 18

**A. No other California case has addressed the issue of force majeure applied to a borrower's obligation to meet debt service payments during the continuance of the force majeure event.** ........ 18

**VII. CIVIL CODE SECTIONS 1511 AND 3531 AND THE DOCTRINE OF IMPOSSIBILITY OR IMPRACTICALITY FAVOR INFINITE GLOW.** ........ 19

**A. Civil Code sections 1511 and 3531 provide a statutory basis for the doctrine of Force Majeure.** ........ 19

**B. California courts have held that the Covid 19 pandemic is an irresistible superhuman cause and government shutdown orders are "restrictive laws" under Civil Code section 1511.** ........ 20

**C. The California common law doctrine of impracticality excuses Infinite Glow from its debt service obligations during the continuance of the Covid 19 pandemic and its aftermath.** ........ 21

**D. Supreme Court cases show that Infinite Glow is entitled to relief under Civil Code section 1511 and under the common law doctrine of force majeure.** ........ 21

**E. The Bank's knowledge that the collection of rent was Infinite Glow's only source of money to pay debt service supports the application of Civil Code section 1511 and the doctrine of force majeure.** ........ 23

**F. The Loan does not contain a force majeure clause or an allocation of risk clause.** ........ 25

**VIII. THE TRIAL COURT AND JUDGE MURPHY ERRED IN THEIR RELIANCE ON INAPPLICABLE CASE LAW.** ........ 25

**A. SVAP III Poway Crossings, LLC v. Fitness International, LLC, 87 Cal.App.5th 882 (2023), is not precedent for the dispute between Infinite Glow and the Bank.** ........ 25

**B. KB Salt Lake III, LLC v. Fitness Internat., LLC, 95 Cal.App.5th 1032 (2023), is not precedent for the dispute between Infinite Glow and the Bank.** ........ 27

**C. West Pueblo Partners, LLC v. Stone Brewing Co., LLC, 90 Cal.App.5th 1179 (2023), is not precedent for the dispute between Infinite Glow and the Bank.** ........ 29

**IX. Loan Transactions are not excepted from the scope of Civil Code section 1511 or from the general doctrine of force majeure.** ........ 31

**X. All courts that have considered the doctrine of force majeure in connection with the Covid 19 pandemic have viewed the pandemic as a force majeure event.** ........ 32

**XI. Judge Murphy agreed that the Covid 19 pandemic and the Moratorium are events of force majeure, but he arbitrarily and capriciously ruled that Infinite Glow was not prevented from making debt service payments without discussing any of the allegations in the complaint.** ........ 33

**XII. Conclusion – Judge Murphy's arbitrary and capricious ruling and the trial court's judgment on Judge Murphy's ruling should be reversed.** ........ 35

**CASES**

." SVAP III Poway Crossings, LLC v. Fitness International, LLC, 87 Cal.App.5th at 887........ 27
360 N Rodeo Drive LP v Wells Fargo Bank National Association,2023 WL 2574180 (USDC SDNY)........ 9
Aryeh v. Canon Business Solutions, Inc. (2013) 55 Cal.4th 1185, 1191........ 12
Aubry v. Tri–City Hospital Dist. (1992) 2 Cal.4th 962, 967 ........ 12
Austin v. Medicis, 21 Cal.App.5th 577, 584-585 (2018) ........ 12
Barnett v. Fireman's Fund Ins. Co. (2001) 90 Cal.App.4th 500, 505 ........ 12
Blank v. Kirwan, (1985) 39 Cal.3d 311, 318........ 12
Foxen v. Carpenter (2016), 6 Cal.App.5th 284, 287-288........ 12
Hohenshelt v. Superior Court (2025), 18 Cal. 5th 310, 333........ 21
In re Hitz Restaurant Group (Bankr. N.D. Ill. 2020) 616 B.R. 374........ 31
KB Salt Lake III, LLC v. Fitness Internat., LLC, 95 Cal.App.5th 1032 (2023) ........ 25, 27, 34
KB Salt Lake III, LLC v. Fitness Internat., LLC, 95 Cal.App.5th at 1037........ 27
KB Salt Lake III, LLC v. Fitness Internat., LLC, 95 Cal.App.5th at 1038........ 28
KB Salt Lake III, LLC v. Fitness Internat., LLC, 95 Cal.App.5th at 1043........ 28
Mineral Park Land Co. v. Howard (1916), 172 Cal. 289, 293........ 21
Ontario Deciduous Fruit Growers' Asso. v. Cutting Fruit Packing Co. ... 23, 24
Ontario Deciduous Fruit Growers' Asso. v. Cutting Fruit Packing Co. (1901), 134 Cal. 21........ 23
Ontario Deciduous Fruit Growers' Asso. v. Cutting Fruit Packing Co. , 134 Cal. at 23-25 ........ 24
Oosten v. Hay Haulers Dairy Employees & Helpers Union (1955) 45 Cal.2d 784, 788........ 22
Oosten v. Hay Haulers Dairy Employees & Helpers Union (1955), 45 Cal.2d 784 ........ 22
Oosten v. Hay Haulers Dairy Employees & Helpers Union (1955), 45 Cal.2d at 788-789........ 22
Oosten v. Hay Haulers Dairy Employees & Helpers Union (1955), 45 Cal.2d at 789........ 23
Pacific Vegetable Oil Corp. v. C. S. T., Ltd. (1946), 29 Cal. 2d 228, 238........ 21
Schifando v. City of Los Angeles (2003) 31 Cal.4th 1074, 1081........ 12
Schifando v. City of Los Angeles (2003), 31 Cal.4th 1074, 1081........ 12
SVAP III Poway Crossings, LLC v. Fitness International, LLC, 87 Cal.App.5th 882 (2023)........ 25, 34

SVAP III Poway Crossings, LLC v. Fitness International, LLC, 87 Cal.App.5th 882, 892 (2023) ........ 8
SVAP III Poway Crossings, LLC v. Fitness International, LLC, 87 Cal.App.5th 882, 894 (2023) ........ 20
SVAP III Poway Crossings, LLC v. Fitness International, LLC, 87 Cal.App.5th at 885 ........ 26
SVAP III Poway Crossings, LLC v. Fitness International, LLC, 87 Cal.App.5th at 889 and 892 ........ 26
SVAP III Poway Crossings, LLC v. Fitness International, LLC, 87 Cal.App.5th at 892 ........ 20
Vernon v. Los Angeles (1955), 45 Cal. 2d 710, 712 ........ 21
Vernon v. Los Angeles (1955), 45 Cal. 2d at 717 ........ 21
West Pueblo Partners, LLC v. Stone Brewing Co., LLC (2023), 90 Cal.App.5th 1179, 1187 ........ 20
West Pueblo Partners, LLC v. Stone Brewing Co., LLC, 90 Cal.App.5th 1179 (2023) ........ 25, 29, 34
West Pueblo Partners, LLC v. Stone Brewing Co., LLC, 90 Cal.App.5th 1179, 1187 (2023) ........ 8
West Pueblo Partners, LLC v. Stone Brewing Co., LLC, 90 Cal.App.5th at 1181 ........ 29
West Pueblo Partners, LLC v. Stone Brewing Co., LLC, 90 Cal.App.5th at 1182 ........ 30
West Pueblo Partners, LLC v. Stone Brewing Co., LLC, 90 Cal.App.5th at 1184 ........ 30
West Pueblo Partners, LLC v. Stone Brewing Co., LLC, 90 Cal.App.5th at 1188 ........ 31

## I. INTRODUCTION: THIS APPEAL SEEKS TO CORRECT AN EGREGIOUS MISAPPLICATION OF CIVIL CODE SECTION 1511, CIVIL CODE SECTION 3531, AND THE DOCTRINE OF FORCE MAJEURE.

### A. Nature of the Action: Infinite Glow LLC filed an action for Declaratory Relief that the doctrine of force majeure resulting from Covid-19 pandemic and the ensuing moratoria excused the debt service payments to the Bank during the Covid-19 pandemic and its aftermath.

Plaintiff and Appellant Infinite Glow LLC ("Infinite Glow") entered into a loan agreement ("Loan") on November 6, 2018, with JPMorgan Chase Bank N.A. ("Bank") secured by a purchase money deed of trust ("Deed of Trust") on real property with 18 residential efficiency units located at 2912 14th Ave, Oakland, CA 94606 ("Property"). Shortly thereafter, disaster struck. California was struck by the Covid-19 pandemic, causing the City of Oakland and the County of Alameda to impose a rent moratorium and an eviction moratorium. Infinite Glow, a single asset limited liability company with only limited operating reserves, depended on the collection of rent to service the Loan.

This Act of God and the ensuing state and local legislation prevented Infinite Glow from making debt service payments, and the Bank commenced foreclosure proceedings. As a consequence, Infinite Glow filed this lawsuit for declaratory relief, invoking Civil Code section 1511 and Civil Code section 3531 and the general legal doctrine  of impracticality of performance as a defense. Infinite Glow recognizes its obligation to resume debt

service payments after the end of the Covid 19 pandemic and its aftermath.

The Loan does not contain a force majeure clause or an allocation of risk clause, and therefore Civil Code section 1511 (performance is excused when prevented or delayed by operation of law or an irresistible, superhuman cause) and Civil Code section 3531 (the law never requires an impossibility) and the general legal doctrine of impracticality of performance apply as defenses to the Bank's foreclosure proceedings.

This is a case of first impression in California state courts. Several cases have discussed whether force majeure applies in the context of Covid-19, but those cases dealt with lease agreements with large companies as lessees that independently had the resources to pay rent, and the lease agreements had force majeure clauses that allocated the risks to the tenants. These two key facts distinguish these prior cases from Infinite Glow, which in contrast is a single-asset limited liability company with no financial resources to pay the debt service if it cannot collect rent, and where the Loan does not contain a force majeure clause or an allocation of risk clause. Infinite Glow's complaint alleges that the Bank assumed the risk of a force majeure event.

The Court of Appeal has recognized that "There is no dispute that the Covid-19 pandemic qualified as a [force majeure] event". *West Pueblo Partners, LLC v. Stone Brewing Co., LLC*, 90 Cal.App.5th 1179, 1187 (2023). "[T]he closure orders are "restrictive laws"". *SVAP III Poway Crossings, LLC v. Fitness International, LLC*, 87 Cal.App.5th 882, 892 (2023). "The

irresistible, superhuman cause identified by [defendant] here is the COVID-19 pandemic." *Id* at 894.

Several non-California cases are directly on point and support Infinite Glow's position that the Act of God doctrine relieves Infinite Glow from paying debt service during the continuance of the Covid-19 pandemic and its aftermath. In particular, *360 N Rodeo Drive LP v Wells Fargo Bank National Association,2023 WL 2574180 (USDC SDNY)* is directly on point. 360 N Rodeo Drive LP was a single asset limited partnership that owned a hotel in Beverly Hills financed by a loan from Wells Fargo Bank, and it could not meet loan service obligations to Wells Fargo Bank. The loan agreement did not contain a force majeure clause. The Federal District Court held that the doctrine of force majeure relieved 360 N Rodeo Drive LP from debt service obligations during the Covid 19 pandemic.

### B. Relief sought in the Trial Court: Infinite Glow sought Declaratory Relief that Debt Service obligations are suspended during the Covid-19 pandemic and the ensuing moratoria on rent collection.

Infinite Glow sought declaratory relief that the debt service obligations were suspended during the Covid 19 pandemic and its aftermath. Yet the trial court sustained the demurrer without leave to amend. As Infinite Glow demonstrates in this brief, Infinite Glow's allegations in the complaint are sufficient to withstand a demurrer. The sustaining of the demurrer without leave to amend should be reversed. Infinite Glow should be allowed to prove at trial that the California doctrine of force majeure as embodied in Civil Code section 1511, Civil Code

section 3531, and the general legal doctrine of impracticality of performance are valid defenses to the Bank's attempt to foreclose.

### C. Judgment appealed from: Infinite Glow appeals from a judgment sustaining a demurrer to its Complaint without leave to amend.

The trial court entered a judgment on an order by the court-appointed Referee sustaining the demurrer by the Bank to Infinite Glow's Complaint for declaratory relief. After Infinite Glow filed its Complaint, the Bank moved to appoint a Referee pursuant to a provision in the Loan agreement. The trial court ordered the appointment of Hon. Kevin J. Murphy (Ret.) as the referee. The Bank demurred to Infinite Glow's Complaint, and Judge Murphy sustained the demurrer. Thereafter, the trial court entered a judgment of dismissal based on the Referee's order.

## II. ISSUE ON APPEAL

The single issue before the Court of Appeal is this: Did the trial court err in entering judgment on an order of the Court-appointed Referee sustaining the Bank's demurrer to Infinite Glow's complaint for declaratory relief on the basis that Infinite Glow's complaint did not allege facts to state a cause of action under the California doctrine of force majeure as embodied in Civil Code section 1511, Civil Code section 3531, and the general legal doctrine of impracticality of performance. Infinite Glow answers "Yes", the trial court erred in sustaining the demurrer to Infinite Glow's complaint because the facts alleged in the Complaint state a cause of action, and, if proved at trial, Infinite

Glow would be entitled to relief under the California doctrine of force majeure.

## III. STATEMENT OF APPEALABILITY

The trial court entered its judgment in this action on July 22, 2025. The judgment is appealable under CCP section 904.1(a)(1).

## IV. STANDARD OF REVIEW

### A. A Judgment Dismissing an Action after the Trial Court Sustains a Demurrer Is Reviewed De Novo, and Every Inference Must Be Drawn in Infinite Glow's Favor.

"When reviewing a judgment dismissing a complaint after the granting of a demurrer without leave to amend, courts must assume the truth of the complaint's properly pleaded or implied factual allegations. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) Courts must also consider judicially noticed matters. (Ibid.) In addition, we give the complaint a reasonable interpretation, and read it in context. (Ibid.) If the trial court has sustained the demurrer, we determine whether the complaint states facts sufficient to state a cause of action. If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. (Ibid.) If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. (Ibid.) The plaintiff has the burden of proving that an amendment would cure the defect. (Ibid.)" (*Schifando v. City*

*of Los Angeles* (2003), 31 Cal.4th 1074, 1081.) *Austin v. Medicis*, 21 Cal.App.5th 577, 584-585 (2018). (*See also Blank v. Kirwan*, (1985) 39 Cal.3d 311, 318.)

On appeal from a judgment dismissing an action after the sustaining of a demurrer, the Court of Appeal reviews the matter de novo. (*Aryeh v. Canon Business Solutions, Inc*. (2013) 55 Cal.4th 1185, 1191.) For the limited purpose of reviewing the propriety of the trial court's ruling, the Court accepts as true all well-pled factual allegations in the operative complaint, as well as any facts that may be reasonably implied or inferred from those expressly alleged. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) The Court also considers the exhibits attached to the pleading. "[T]o the extent the factual allegations conflict with the content of the exhibits to the complaint, we rely on and accept as true the contents of the exhibits and treat as surplusage the pleader's allegations as to the legal effect of the exhibits." (*See Barnett v. Fireman's Fund Ins. Co.* (2001) 90 Cal.App.4th 500, 505.) The Court does not "however, assume the truth of contentions, deductions or conclusions of law." (*Aubry v. Tri–City Hospital Dist*. (1992) 2 Cal.4th 962, 967.) *See Foxen v. Carpenter* (2016), 6 Cal.App.5th 284, 287-288.

## V. STATEMENT OF CASE AND FACTS SUPPORTING THE APPEAL

### A. Infinite Glow LLC is a single asset limited liability company operating an apartment building financed by a loan from JP Morgan Chase Bank.

The following facts are taken from the complaint filed in this case.

Infinite Glow LLC ("Infinite Glow") and JP Morgan Chase Bank N.A. ("Bank") negotiated a loan of $3,200,000 ("Loan") secured by a deed of trust ("Deed of Trust") for purchase of a rental housing property with 18 efficiency units located at 2912 14th Ave, Oakland, CA 94606 ("Property"). The Loan does not contain any provision dealing with Acts of God or other unforeseeable events and does not contain a "force majeure" clause. (AA-1, p. 006.)

Infinite Glow is a single purpose limited liability company, and its only asset is the Property. Infinite Glow has no other source of income. As an integral part of the due diligence in successfully processing and funding the loan, the Bank verified the accuracy of the gross rental income of the Property and also verified the various categories of expenses of the Property by requiring the Property seller to provide that data to the Bank. The Bank knew that the only asset of Infinite Glow was the Property and the only income of Infinite Glow derived from the rent paid by the tenants of the Property. The Bank analyzed the location of the Property and determined the Property was in a desirable location. The Bank analyzed all the data to make sure

that rental gross income after meeting the expenses, with the remainder funds, was more than adequate to fulfil the monthly loan payments under the Loan, including payments of interest and principal. The Bank has deep knowledge of real estate lending, including the risks and benefits of financing the purchase of real property, including the Property. The Bank relied primarily on the rental income from the Property, the location of the Property, and the condition of the Property to qualify the Property as adequate collateral, and for Infinite Glow to make the payments under the Loan. (AA-1, p. 006-007.)

Almost a year and half later, in the first quarter of 2020, unbeknownst to anyone that it would occur, an act of God in the form of the COVID-19 pandemic ("pandemic") occurred. The severity of the pandemic was extreme in multiple ways, resulting in extreme governmental actions by Federal, State, County, and City governments, including Alameda County and the City of Oakland, where the Property is located. Both the County of Alameda and the City of Oakland, independent of each other, declared health emergencies, and exercised broad powers under the emergency regulations, and put in place new regulations restricting evictions and imposing a rent moratorium (collectively designated by the singular "Moratorium"). As a result, Infinite Glow was completely prevented from collecting rent from the tenants. (AA-1, p. 007.)

Further, Alameda County and the City of Oakland adopted ordinances imposing the Moratorium on residential evictions and rent increases, and prohibiting late fees during the Local

Emergency. The Ordinances also prohibited evictions based on nonpayment of rent that became due during the Local Emergency if the tenant suffered a substantial reduction of income or substantial increase of expenses due to COVID-19. Evictions were banned until the end of the Local Emergency. The ordinances prohibited late fees for non-payment of rent. The ordinances prohibited rent increase greater than the CPI, or if lower, 3%. (AA-1, p. 007.)

The Moratorium partially ended on July 15, 2023. Theoretically, Infinite Glow would have the ability to terminate tenancies on any valid ground. But the Moratorium on the increase in rents did not end until June 30, 2024. Under the Moratorium, the tenant was still obligated to pay rent owed during the "Local Emergency". The Moratorium on evictions did not relieve the tenant of liability for unpaid rent. Notwithstanding the partial ending of the Moratorium, for evictions based on non-payment of rent that accrued between March 9, 2020, and July 14, 2023, tenants could not be evicted if the rent was unpaid due to financial hardship caused by the COVID-19 pandemic. (AA-1, p. 007-008.)

As a practical matter, the ending of the eviction and rent Moratorium did not benefit Infinite Glow with respect to collecting past rent, although the tenants are theoretically still obligated to pay back rent. But at this point, as a practical matter, Infinite Glow cannot collect the past rent. Further, as a practical matter, because the tenants had not paid rent for over three years, the tenants were reluctant to start paying the full

rent again. The process of eviction is time-consuming and expensive and was not a viable option. (AA-1, p. 008.)

These actions by the City of Oakland and the County of Alameda were completely unforeseen by either Infinite Glow or the Bank. The Moratorium drastically altered the rental housing market place, caused extreme hardship to property owners by enabling the tenants to live rent free and thus creating entirely unforeseen conditions for Infinite Glow that had not existed at the time of funding the loan in November 2018. Infinite Glow was unable to evict non-rent paying tenants and to replace them with tenants who would pay the rent. As a result, Infinite Glow could not collect enough rent to make the monthly payments under the Loan. As a result of the pandemic and the Moratorium, the foundations and assumptions on which both Infinite Glow and the Bank relied in connection with the Loan were destroyed. The pandemic and the Moratorium were completely outside of the control of either or both of Infinite Glow and the Bank. The pandemic was an irresistible and superhuman cause preventing or delaying Infinite Glow and the Bank from realizing the benefits of the Loan. (AA-1, p. 009.)

The Moratorium placed extreme hardship on the family that owns Infinite Glow and Infinite Glow itself. The Moratorium prevented or delayed the performance by Infinite Glow under the Loan because Infinite Glow was unable to collect rents for the purpose of making payments under the Loan. Without collecting the rents, Infinite Glow had no funds to make the payments under the Loan or to make property tax payments. The pandemic

and the Moratorium made the performance by Infinite Glow under the Loan impossible or impractical. The pandemic and the Moratorium prevented or delayed the performance by Infinite Glow under the Loan and frustrated the purpose of the Loan. The pandemic and the Moratorium frustrated the purpose of the Loan, namely for Infinite Glow to collect rents from tenants, to repay the loan, with interest, and for the Bank to collect principal and interest payments. See Civil Code section 1511 and Civil Code section 3531. (AA-1, p. 009.)

Infinite Glow intends to pay all amounts owing to the Bank. The purpose of the Complaint is not to "stiff" the Bank. The purpose of the Complaint is to allow Infinite Glow the time necessary to collect rents from the tenants to enable Infinite Glow to pay the Bank. (AA-1, p. 010.)

The purpose of Civil Code section 1511 and Civil Code section 3531 is to protect both parties to a contract if Acts of God make performance of the contract impossible or impractical. The Bank seeks to impose the entire burden and brunt of the Moratorium on Infinite Glow. The Bank seeks to avoid any of the burden of the Covid-19 pandemic and its aftermath. The equitable considerations underlying Civil Code section 1511 mandate that the Bank as well as Infinite Glow bear the burdens imposed by the Act of God in the form of Covid-19 and the Moratorium imposed by the City of Oakland and the County of Alameda. (AA-1, p. 010.)

The burden imposed on the Bank is quite minimal compared with the burden that the Bank is imposing on Infinite

Glow. Infinite Glow only requests a temporary suspension of debt service payments owing to the Bank that Infinite Glow was prevented from making during the Moratorium. In contrast, the Bank demands immediate payment with the threat that if Infinite Glow cannot make immediate payment, the Bank will entirely deprive Infinite Glow of ownership of the Property through a foreclosure. (AA-1, p. 010.)

Because the Covid 19 pandemic and the Moratorium made it impossible or impractical for Infinite Glow to make the payments under the Loan, and the Bank being unwilling to accommodate the reasonable requests of Infinite Glow, even after Infinite Glow had repeatedly apprised the Bank of the Moratorium and the impossibility of collecting rent, the Bank declared a default and recorded a Notice of Default on August 4, 2023 ("Notice of Default"). Thus, the Bank is inexorably moving toward a nonjudicial foreclosure that would permanently and irrevocably deprive Infinite Glow of its significant equity in the Property. (AA-1, p. 010.)

## VI. THIS APPEAL IS A CASE OF FIRST IMPRESSION.

### A. No other California case has addressed the issue of force majeure applied to a borrower's obligation to meet debt service payments during the continuance of the force majeure event.

Infinite Glow has found no other California case that directly considers the impact of a force majeure event on the obligation of a borrower to meet debt service payments during the continuance of the force

majeure event. Judge Murphy did not cite any such case in his Statement of Decision. The Bank did not cite any such case in any of its briefing.

## VII. CIVIL CODE SECTIONS 1511 AND 3531 AND THE DOCTRINE OF IMPOSSIBILITY OR IMPRACTICALITY FAVOR INFINITE GLOW.

### A. Civil Code sections 1511 and 3531 provide a statutory basis for the doctrine of Force Majeure.

Civil Code section 1511 provides in part:

> The *want of performance of an obligation*, or of an offer of performance, in whole or in part, or any delay therein, *is excused by the following causes*, to the extent to which they operate:
>
> 1. When such *performance or offer is prevented or delayed by * * * the operation of law*,
>
> 2. When it is *prevented or delayed by an irresistible, superhuman cause*, or by the act of public enemies of this state or of the United States, *unless the parties have expressly agreed to the contrary*[.]
>
> ***

Civil Code section 3531 provides, "The law never requires impossibilities."

Infinite Glow alleges that its performance of the debt service obligations were prevented both by operation of law with the moratorium on rent payments and evictions, and by the irresistible superhuman cause of Covid 19. Infinite Glow also alleges that the Loan did not contain any force majeure clause and Infinite Glow and the Bank did not agree to waive Civil Code section 1511 or Civil Code section 3531. At the demurrer stage, these allegations are accepted as true. Infinite Glow should have the opportunity to prove the allegations at trial.

### B. California courts have held that the Covid 19 pandemic is an irresistible superhuman cause and government shutdown orders are "restrictive laws" under Civil Code section 1511.

The Court of Appeal considered whether the Covid 19 pandemic constituted an irresistible superhuman cause. In *West Pueblo Partners, LLC v. Stone Brewing Co., LLC* (2023), 90 Cal.App.5th 1179, 1187, the Court of Appeal noted approvingly that, "There is no dispute that the COVID-19 pandemic qualified as a [force majeure] event potentially implicating the [force majeure] provision of the lease." In *SVAP III Poway Crossings, LLC v. Fitness International, LLC*, 87 Cal.App.5th 882, 894 (2023), the Court agreed with the defendant that the "irresistible, superhuman cause identified by [defendant] here is the COVID-19 pandemic."[1]

The Court In *SVAP III Poway Crossings, LLC v. Fitness International, LLC* further agreed "that the closure orders are 'restrictive laws'" for purposes of force majeure and Civil Code section 1511. *SVAP III Poway Crossings, LLC v. Fitness International, LLC,* 87 Cal.App.5th at 892.

Infinite Glow alleges that the Covid 19 pandemic is an irresistible superhuman force preventing Infinite Glow from meeting the debt service obligation and that the Moratorium by operation of law prevented Infinite Glow from meeting the debt service obligation. Infinite Glow should have the opportunity to prove these allegations at trial.

---

1 Judge Murphy also wrongly relied on these cases in his statement of decision. See discussion below at p. 27.

### C. <u>The California common law doctrine of impracticality excuses Infinite Glow from its debt service obligations during the continuance of the Covid 19 pandemic and its aftermath.</u>

A contract is impossible of performance in legal contemplation when it is not practicable, as when it can only be done at excessive or unreasonable cost. *Vernon v. Los Angeles* (1955), 45 Cal. 2d 710, 712. A defendant has "the defense of impossibility -- not literal impossibility, but impracticability due to excessive and unreasonable expense. " *Vernon v. Los Angeles* (1955), 45 Cal. 2d at 717. The Supreme Court cited to *Mineral Park Land Co. v. Howard* (1916), 172 Cal. 289, 293.

The Supreme Court has explained the doctrine of force majeure.

> "Force majeure," or the Latin expression "vis major," is not necessarily limited to the equivalent of an act of God. The test is whether under the particular circumstances there was such an insuperable interference occurring without the party's intervention as could not have been prevented by the exercise of prudence, diligence and care.

*Pacific Vegetable Oil Corp. v. C. S. T., Ltd.* (1946), 29 Cal. 2d 228, 238. In this case, the "force majeure" included government regulations and restrictions imposed during the war.

### D. <u>Supreme Court cases show that Infinite Glow is entitled to relief under Civil Code section 1511 and under the common law doctrine of force majeure.</u>

In August 2025, in *Hohenshelt v. Superior Court* (2025), 18 Cal. 5th 310, 333, the California Supreme Court again described the scope of Civil Code section 1511, explaining that this section "provides that a breach may

be excused when performance of the contractual obligation would be impossible, illegal, or impracticable "'because of extreme and unreasonable difficulty, expense, injury, or loss involved,'" *quoting Oosten v. Hay Haulers Dairy Employees & Helpers Union* (1955) 45 Cal.2d 784, 788. "Civil Code section 1511 fully excuses the nonperforming party when its conditions are met." Id., 18 Cal. 5th at 333.

The California Supreme Court in *Oosten v. Hay Haulers Dairy Employees & Helpers Union* (1955), 45 Cal.2d 784, explained that "impossibility" includes "impracticality".

> *"'Impossibility' is defined* in section 454 of the Restatement of Contracts, as not only strict impossibility but *as impracticability* because of *extreme and unreasonable difficulty*, expense, injury, or loss involved. *Temporary impossibility* of the character which, if it should become permanent, would discharge a promisor's entire contractual duty, operates as a permanent discharge if performance after the impossibility ceases would impose a substantially greater burden upon the promisor; *otherwise the duty is suspended while the impossibility exists.* (Emphasis added.)

*Oosten v. Hay Haulers Dairy Employees & Helpers Union* (1955), 45 Cal.2d at 788-789.

Infinite Glow alleges that the Covid 19 pandemic and the ordinances and regulations imposed by the City of Oakland and Alameda County constituted a "force majeure" event that made it impossible or impracticable for Infinite Glow to meet the debt service obligations under the loan. The ordinances enacted by the City of Oakland and Alameda County suspending the collection of rent was "extreme" – entirely preventing Infinite Glow from collecting rent from which both Infinite Glow and the Bank relied as a source of funds to pay debt service. This force majeure event prevented Infinite Glow from collecting rent. Infinite Glow had no other resources to pay the debt service. The Bank knew that

Infinite Glow had no other resources to pay the debt service other than from the collection of rent. Because the Covid 19 pandemic and the Moratorium prevented Infinite Glow from collecting rent and pay the debt service, Infinite Glow therefore is excused from such debt service requirements during the continuance of the "force majeure" event and its lingering aftermath.

"[T]he question remains whether those things have made performance impossible." *Oosten v. Hay Haulers Dairy Employees & Helpers Union* (1955), 45 Cal.2d at 789. Infinite Glow should have the opportunity to prove its allegations at trial.

### E. <u>The Bank's knowledge that the collection of rent was Infinite Glow's only source of money to pay debt service supports the application of Civil Code section 1511 and the doctrine of force majeure.</u>

The California Supreme Court case *Ontario Deciduous Fruit Growers' Asso. v. Cutting Fruit Packing Co.* (1901), 134 Cal. 21, elucidates the application of the force majeure doctrine. In this case, a grower had contracted to sell fruit to the plaintiff. But "the sale having been of specific varieties of fruit growing and to be grown on specific orchards, and the orchards having been so far affected by the extraordinary drought that they did not produce sufficient fruit of the varieties named to comply with the contract," The buyer argued that the grower should have covered the contract by sourcing fruit from other growers in sufficient amount to meet the contract. The Supreme Court held that under the force majeure doctrine the grower could not be liable for breach of contract. The Supreme Court pointed out the buyer had inspected the orchards and understood that the fruit would come from specific orchards. Both the grower and the buyer understood that in a normal year, the orchards would produce sufficient

fruit to satisfy the contract. When the extreme drought resulted in a lower crop yield, it was impossible for the grower to deliver the quantity of fruit from the specific orchards. The Supreme Court held that the doctrine of force majeure relieved the grower from the obligation to deliver the full contract amount of fruit. *Ontario Deciduous Fruit Growers' Asso. v. Cutting Fruit Packing Co.* , 134 Cal. at 23-25.

In the case of Infinite Glow and the Bank, Infinite Glow alleges that the Bank had inspected the Property and had analyzed the rent roll and the expected rent. The Bank had determined that the expected rent collection would be sufficient to pay the debt service. The Bank knew that the only source of revenue to pay the debt service was the rent stream owing to Infinite Glow and that Infinite Glow had no other assets.

These facts are analogous to the facts in *Ontario Deciduous Fruit Growers' Asso. v. Cutting Fruit Packing Co*. Both the Bank and the buyer knew that the only sources for fulfilling the contracts were the rental income from the Property, in the case of Infinite Glow, and the fruit from the specific orchards, in the case of the buyer. In each case, a superhuman event occurred that prevented Infinite Glow from paying debt service and prevented the grower from delivering fruit. In *Ontario Deciduous Fruit Growers' Asso. v. Cutting Fruit Packing Co*., the Supreme Court held that the doctrine of force majeure relieved the grow from the obligation to deliver the full contract amount of fruit. Similarly, the doctrine of force majeure should relieve Infinite Glow from the obligation of making debt service payments during the continuance of the Covid 19 pandemic and its aftermath.

### F. <u>The Loan does not contain a force majeure clause or an allocation of risk clause.</u>

The Loan does not contain a force majeure clause or an allocation of risk clause. The Loan is simply silent on the allocation of risk. The Loan contains no clause that would waive or otherwise affect the application of Civil Code section 1511 or Civil Code section 3531. Accordingly, these two Civil Code sections apply directly to Infinite Glow and to the Bank. California's common-law doctrine of force majeure, impossibility, and impracticability apply to the Loan and Infinite Glow and the Bank.

## VIII. THE TRIAL COURT AND JUDGE MURPHY ERRED IN THEIR RELIANCE ON INAPPLICABLE CASE LAW.

The trial court and Judge Murphy relied on three reported cases in California that have examined force majeure in the context of commercial leases during the Covid pandemic, namely *SVAP III Poway Crossings, LLC v. Fitness International*, LLC, 87 Cal.App.5th 882 (2023), *KB Salt Lake III, LLC v. Fitness Internat., LLC*, 95 Cal.App.5th 1032 (2023), and *West Pueblo Partners, LLC v. Stone Brewing Co., LLC*, 90 Cal.App.5th 1179 (2023). In each of these cases, the tenant sought to suspend the payment of rent because of the Covid 19 pandemic. But in each case, the facts differ materially from the facts of the case between Infinite Glow and the Bank.

### A. <u>SVAP III Poway Crossings, LLC v. Fitness International, LLC, 87 Cal.App.5th 882 (2023), is not precedent for the dispute between Infinite Glow and the Bank.</u>

In *SVAP III Poway Crossings, LLC v. Fitness International*, LLC, 87 Cal.App.5th 882 (2023), Fitness International, LLC ("Fitness") sought to suspend the rent payments under the

doctrine of force majeure. The trial court held that the doctrine of force majeure did not apply. The crucial factors are these:

- The trial court rendered its decision on summary judgment, not on demurrer. Accordingly, the trial court reviewed and analyzed the evidence. *(SVAP III Poway Crossings, LLC v. Fitness International*, LLC, 87 Cal.App.5th at 885.) In contrast, Judge Murphy rendered his decision on a demurrer in favor of the Bank, not even considering the evidence.
- The lease had a force majeure clause, which stated that, "Delays or failures to perform resulting from lack of funds or which can be cured by the payment of money shall not be Force Majeure Events." *(SVAP III Poway Crossings, LLC v. Fitness International*, LLC, 87 Cal.App.5th at 889 and 892.) Civil Code section 1511.2 applies when performance "is prevented or delayed by an irresistible, superhuman cause . . . , Unless the parties have expressly agreed to the contrary". Thus, SVAP and Fitness by contract had allocated the risk between them with respect to lack of funds and expressly agreed that the lack of funds would not be an event of force majeure. In contrast, the Loan between Infinite Glow and the Bank contains no force majeure clause and no allocation of risk.
- Fitness did not claim that it could not pay the rent because of lack of funds. The court specifically noted that Fitness's "failure to pay was not due to lack of

funds." ." *(SVAP III Poway Crossings, LLC v. Fitness International*, LLC, 87 Cal.App.5th at 887.) In contrast, Infinite Glow did not have funds to pay the debt service, and the Bank knew this at the outset of the Loan. Both Infinite Glow and the Bank relied on the premise that Infinite Glow would collect rents in order to pay the debt service.

**B. KB Salt Lake III, LLC v. Fitness Internat., LLC, 95 Cal.App.5th 1032 (2023), is not precedent for the dispute between Infinite Glow and the Bank.**

In *KB Salt Lake III, LLC v. Fitness Internat., LLC*, 95 Cal.App.5th 1032 (2023), Fitness leased premises from KB Salt Lake III, LLC ("KB"). Fitness defaulted in payment of rent on the premises for one of its commercial fitness centers. KB sought to terminate the lease. Fitness raised the defense of force majeure. The trial court held that the doctrine of force majeure did not apply. The crucial factors are these:

- The trial court rendered its decision on summary judgment, not on demurrer. Accordingly, the trial court reviewed and analyzed the evidence. *(KB Salt Lake III, LLC v. Fitness Internat., LLC*, 95 Cal.App.5th at 1037.) In contrast, Judge Murphy rendered his decision in favor of the Bank on a demurrer, without even considering the evidence.
- The lease had a force majeure clause, which included common events typically included in a force majeure clause, but provided, "financial inability excepted" from

the events constituting force majeure. The force majeure clause further provided, "Delays or failures to perform resulting from lack of funds or which can be cured by the payment of money shall not be Force Majeure Events." *(KB Salt Lake III, LLC v. Fitness Internat., LLC*, 95 Cal.App.5th at 1038.) Civil Code section 1511.2 applies when performance "is prevented or delayed by an irresistible, superhuman cause . . . , Unless the parties have expressly agreed to the contrary". Thus, KB and Fitness by contract had allocated the risk between them with respect to lack of funds and expressly agreed that the lack of funds would not be an event of force majeure. In contrast, the Loan between Infinite Glow and the Bank contains no force majeure clause and no allocation of risk.

- Fitness did not claim that it could not pay the rent because of lack of funds. The court specifically noted that "Fitness International "admitted it had the funds to pay rent."" *(KB Salt Lake III, LLC v. Fitness Internat., LLC*, 95 Cal.App.5th at 1043.) The court held that because Fitness had the funds to pay the rent, the Covid 19 pandemic and the governmental policies restricting public gatherings did not prevent Fitness from paying the rent. In contrast, Infinite Glow did not have funds to pay the debt service, and the Bank knew this at the outset of the Loan. Both Infinite Glow and the Bank relied on the premise that Infinite Glow would collect

rents in order to pay the debt service.

### C. West Pueblo Partners, LLC v. Stone Brewing Co., LLC, 90 Cal.App.5th 1179 (2023), is not precedent for the dispute between Infinite Glow and the Bank.

In *West Pueblo Partners, LLC v. Stone Brewing Co., LLC, 90 Cal.App.5th 1179 (2023)*, Stone Brewing Co., LLC ("Brewing") leased premises from West Pueblo Partners, LLC ("Pueblo"). Brewing defaulted in payment of rent on the premises for one of its restaurants. Pueblo sought to terminate the lease. Brewing raised the defense of force majeure. The trial court held that the doctrine of force majeure did not apply. The crucial factors are these:

- The trial court rendered its decision on summary judgment, not on demurrer. Accordingly, the trial court reviewed and analyzed the evidence. *(West Pueblo Partners, LLC v. Stone Brewing Co., LLC, 90 Cal.App.5th* at 1181.) In contrast, Judge Murphy rendered his decision in favor of the Bank on a demurrer, without even considering the evidence.
- The lease had a force majeure clause:

> "FORCE MAJEURE. If either Party is *delayed, interrupted or prevented from performing any of its obligations under this Lease*, and such delay, interruption or prevention is due to fire, act of God, governmental act or failure to act, labor dispute, unavailability of materials or any cause outside the reasonable control of that Party, then the time for performance of the affected obligations of the Party shall be extended for a period equivalent to the period of such delay,

interruption or prevention." (Emphasis added.) *(West Pueblo Partners, LLC v. Stone Brewing Co., LLC, 90 Cal.App.5th* at 1182.) Thus, Brewing and Pueblo by contract had allocated the risk between them with respect to the ability to pay rent and expressly agreed that an event of force majeure would apply only if such event prevented Brewing from paying rent. In contrast, the Loan between Infinite Glow and the Bank contains no force majeure clause and no allocation of risk.

- Brewing did not claim that it could not pay the rent because of lack of funds. The court specifically noted that Brewing "conceded during litigation that it had the ability to pay rent for the building". (*West Pueblo Partners, LLC v. Stone Brewing Co., LLC*, 90 Cal.App.5th at 1184.) The court held that because Brewing had the funds to pay the rent, the Covid 19 pandemic and the governmental policies restricting public gatherings did not prevent Brewing from paying the rent. In contrast, Infinite Glow did not have funds to pay the debt service, and the Bank knew this at the outset of the Loan. Both Infinite Glow and the Bank relied on the premise that Infinite Glow would collect rents in order to pay the debt service.

*West Pueblo Partners, LLC,* rather than supporting the Bank, actually supports Infinite Glow. The Court of Appeal described the circumstances in which the force majeure provisions of Civil Code section 1511 and Civil Code section 3531 would apply. The Court cited to *In re Hitz Restaurant Group*

(Bankr. N.D. Ill. 2020) 616 B.R. 374, a bankruptcy case in Illinois, but which concerned a restaurant in Beverly Hills. In *Hitz*, a special purpose entity operated the restaurant and its only asset was the restaurant. It had no other assets and no reserve of cash to pay the rent. The Covid restrictions prevented the restaurant from operating and generating the cash to pay the rent. Therefore, the doctrine of force majeure relieved the tenant of the obligation to pay rent. In contrast to *Hitz*, the Court of Appeal in *West Pueblo Partners, LLC*, noted that the tenant, Brewing, had multiple locations and cash on hand to pay the rent, and therefore the Covid restrictions did not prevent Brewing from performing under the lease. *West Pueblo Partners, LLC v. Stone Brewing Co., LLC*, 90 Cal.App.5th at 1188.

Infinite Glow is similar to the Hitz Restaurant Group. Infinite Glow is a single asset entity. It has no cash and no other asset than the apartment building. Without the ability to collect rent, Infinite Glow cannot pay the debt service. Under the reasoning in *West Pueblo Partners, LLC*, Infinite Glow should be relieved of the obligation to pay debt service during the continuance of the Moratorium and until the effects of the Moratorium have dissipated.

## IX. Loan Transactions are not excepted from the scope of Civil Code section 1511 or from the general doctrine of force majeure.

Loan transactions are not exempt from the scope of Civil Code section 1511 or from the general doctrine of force majeure. Civil Code section 1511 applies to “obligations”, and it makes no exception for obligations arising from a loan. No California case

suggests that loans should be exempt from Civil Code section 1511. And, in fact, the Bank has not suggested that loans should be an exception to Civil Code section 1511. No reason exists to carve out an exception for loans from the force majeure doctrine. Yet, Judge Murphy did just that. He wrote,

> When Civil Code section 1511 is examined, it is clear that Plaintiff's payment of the loan was not prevented or delayed by the creditor, prevented by operation of law, or rendered impossible by the act of a public enemy of the State or United States Government (Civil Code section 1511 (1) (2) (3)). Additionally, Plaintiff's allegations in the Complaint that the Pandemic constituted an irresistible superhuman event is a contention and conclusion that cannot be considered. Moreover, the law referenced by Defendant indicates that as a matter of law this would not be true.

In essence, Judge Murphy's ruling is that unless a law explicitly prohibits the payment of debt service, Civil Code section 1511 has no application. He wrote that "Plaintiff's allegations in the complaint . . . cannot be considered." The per se rule that Judge Murphy adopts is not supported either by the text of Civil Code section 1511 or by any case law. Judge Murphy's ruling is simply arbitrary and capricious. It must be rejected.

## X. All courts that have considered the doctrine of force majeure in connection with the Covid 19 pandemic have viewed the pandemic as a force majeure event.

All courts that have considered the doctrine of force majeure in connection with the Covid 19 pandemic and the laws restricting the collection of rent or the frequenting of public

establishments, including the cases discussed in this brief, have either assumed sub-silento that the pandemic is a force majeure event or have explicitly stated that the pandemic is a force majeure event. None of the cases has held or even suggested that the Covid 19 pandemic and the ensuing governmental ordinances and regulations are not force majeure events. In fact, one cannot deny that the Covid 19 pandemic is "an irresistible, superhuman cause" or that the ordinances enacted by local governments or orders by the state government are not laws that are included in Civil Code section 1511.

## XI. Judge Murphy agreed that the Covid 19 pandemic and the Moratorium are events of force majeure, but he arbitrarily and capriciously ruled that Infinite Glow was not prevented from making debt service payments without discussing any of the allegations in the complaint.

In fact, Judge Murphy, himself, assumes a sub- silento that the Covid 19 pandemic and the Moratorium are force majeure events. Judge Murphy, without hearing evidence, simply states without any support or case law that Infinite Glow "is not prevented or prohibited from paying the loan because of acts of government or nature." (AA-1 123.)

Judge Murphy does include a brief summary of the allegations of Infinite Glow's complaint on pages 1-3 of his Decision. (AA – 1 119-120.) But thereafter, Judge Murphy completely ignores the allegations and does not discuss them.

Judge Murphy wrote, "Plaintiff's allegations that Covid-19 was an "Act of God," an "irresistible superhuman cause," and

references to what could not be done "as a practical matter," such as the payment of rents, are not considered." (AA-1 121.) Judge Murphy arbitrarily and capriciously refused to consider the factual allegations set forth in Infinite Glow's complaint. In particular, he refused to consider and did not discuss Infinite Glow's allegations of fact that Infinite Glow is a single asset LLC with the Property as the only asset, that Infinite Glow had no other financial resources, that the Covid 19 pandemic and the ordinances enacted by the City of Oakland and Alameda County prohibiting the collection of rent were superhuman irresistible forces or restrictions imposed by law, and that Infinite Glow could not make debt service payments because Infinite Glow had no money. These are the very factors, which, if they had been present in *SVAP III Poway Crossings, LLC v. Fitness International*, LLC, 87 Cal.App.5th 882 (2023), *KB Salt Lake III, LLC v. Fitness Internat., LLC*, 95 Cal.App.5th 1032 (2023), and *West Pueblo Partners, LLC v. Stone Brewing Co., LLC*, 90 Cal.App.5th 1179 (2023), the trial courts and the Court of Appeal would have applied the force majeure doctrine of Civil Code section 1511 and California common law.

The logic of Judge Murphy's decision is that in a loan transaction, the obligations of a borrower to make debt service payments are never subject to Civil Code section 1511 or to the California common law doctrine of force majeure. But this is not California law. Judge Murphy is simply wrong.

## XII. Conclusion – Judge Murphy's arbitrary and capricious ruling and the trial court's judgment on Judge Murphy's ruling should be reversed.

Judge Murphy's arbitrary and capricious distortion of California Law should not be allowed to stand. Judge Murphy issued his decision on a demurrer, ignoring the factual allegations in Infinite Glow's complaint. The allegations, if proven, show that Civil Code section 1511 and California's common law of force majeure relieves Infinite Glow of the obligation to make debt service payments during the continuance of the Covid 19 pandemic and its aftereffects. Both Infinite Glow and the Bank knew that Infinite Glow was a single asset LLC without other financial assets. Both Infinite Glow and the Bank knew that the only source of repayment would be the rent collected from tenants in the Property. The Bank had completed its due diligence and was fully aware of these facts. The Loan contained no force majeure clause and contained no allocation of risk in the case of a force majeure event. Accordingly, when the force majeure event came to pass, namely the Covid 19 pandemic and the ordinances enacted by the City of Oakland and Alameda County, Infinite Glow was prohibited from collecting rent from tenants of the Property, and without money from the rents, it was impossible for Infinite Glow to pay the debt service. Under Civil Code section 1511, Infinite Glow was therefore relieved of the obligation to make debt service payments during the continuance of the Covid 19 pandemic and its continuing aftermath. Judge Murphy's decision and the trial court's judgment on Judge Murphy's decision should be reversed.

Finally, it should be noted that Infinite Glow has not repudiated the loan and recognizes the obligation to make debt service payments on principal and interest upon the end of the Covid 19 pandemic and the effects of the ordinances enacted by the City of Oakland and Alameda County.

Respectfully submitted,

DATED: December 26, 2025

THE BUSINESS LEGAL GROUP

Russell M. Frandsen

By ________________________________

Russell M. Frandsen

Attorney for Appellant

## CERTIFICATE OF COMPLIANCE OF THE WORD COUNT

I, Russell M Frandsen, declare:

Pursuant to California Rules of Court, 8.204 (c), I hereby certify that using the word count function within the Microsoft Word and software by which this motion and brief were prepared, this motion and brief contains 9,117 words, inclusive.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 26, 2025, at La Canada Flintridge, California.

/S/Russell M Frandsen

________________________

Russell M Frandsen

## PROOF OF SERVICE

| | |
|---|---|
| STATE OF CALIFORNIA | ) |
| | ) SS |
| COUNTY OF LOS ANGELES | ) |

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 1313 Boulevard, Suite 6, La Canada Flintridge, CA 91011. On October 31, 2023, I served the following document described as:

**APPELLANT'S OPENING BRIEF**

on all interested parties through their respective attorneys of record in this matter:

| | |
|---|---|
| Mia Blackler<br>Victoria Huynh Phan | Lubin Olson & Niewiadomski LLP<br>The Transamerica Pyramid<br>600 Montgomery Street<br>14th Floor<br>San Francisco, CA 94111<br>Phone: (415) 955-5012<br>Facsimile: (415) 981-4343<br>mblackler@lubinolson.com |

METHOD OF SERVICE

☒ BY EMAIL OR ELECTRONIC TRANSMISSION: Based on a court order or an agreement of the parties to accept service by email or electronic transmission, I transmitted the document(s) electronically to the person(s) at the email address(es) above.

I declare under penalty of perjury that the above is true and correct. Executed on December 26, 2025, at La Canada Flintridge, CA 91011.

By ________________________________

Russell M. Frandsen